IN THE UNITED STATES DISCTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOE WAYNE THOMAS | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:11-CV-00462-JRG |
| | § | |
| The STANDARD FIRE | § | |
| INSURANCE COMPANY | § | |
|     Defendant | § | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

Pending before the Court is Defendant Standard Fire Insurance Company's ("Standard Fire") Motion to Dismiss (Dkt. No. 3). For the reasons discussed below, such Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART.**

**II.   Factual and Procedural Background**

On December 27, 1990, Plaintiff Joe Wayne Thomas ("Thomas") was injured during the course of his employment with Stroh Brewery Company ("Stroh") and sustained damage to his cervical and lumbar spine, specifically an L4-L5 ruptured disc. (Dkt. No. 1, ¶ 8.) At the time of the 1990 accident, Defendant Standard Fire, as insurer, provided workers compensation insurance coverage to Stroh and, by extension, to Thomas. On February 26, 1999, Thomas was once again injured while working for Stroh. *Id.* ¶10. At the time of this second injury, Stroh used a different worker's compensation insurance provider, American Motorist Insurance Co. ("American Motorist"). *Id.* ¶11. The extent and nature of Thomas' injuries relating to the 1999 accident are not set forth in the Complaint.

Prior to this suit, Thomas initiated workers compensation proceedings against American Motorist based on his second injury and, after a contested case hearing, the Texas Workers' Compensation Commission determined that Thomas' 1999 injury did not extend to or include an injury to Thomas' cervical and lumbar spine. *Id*. ¶ 15. From December 28, 2004 until May 19, 2011, Medicare made "conditional payments" of not less than $29,179.00 related to the injuries to Thomas' lumbar spine. Thomas now contends that in light of the Workers' Compensation Commission's determination, liability for these payments should be borne by Standard Fire, as a result of his 1990 injury. *Id*. ¶ 16. Further supporting this argument, Thomas notes that the parties executed an "Agreement for Judgment" on March 28, 2003, in which Standard Fire agreed to pay "the reasonable costs of surgery to the lumbar spine of Joe W. Thomas [] until January 31, 2012." (Dkt. No. 1, ¶ 18.)

In response to the allegations set forth in Thomas' Complaint, Standard Fire argues in the present motion to dismiss that (1) the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) on the grounds that Thomas failed to exhaust all his administrative remedies against Standard Fire and such failure deprives the Court of subject matter jurisdiction; and (2) the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) based on the applicable statute of limitations, which Standard Fire asserts is a complete bar to this action. (Dkt. No. 3.)

**III. Governing Law**

*A. Federal Rule of Civil Procedure 12(b)(1)*

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the Court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proving its existence. *Id*. (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). A case is properly dismissed under Rule 12(b)(1)

when the Court lacks the statutory or constitutional power to adjudicate the case. *CLEANCOALITION v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998)). In deciding a Rule 12(b)(1) motion, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Comm'cns Inc.,* 117 F.3d 900, 904 (5th Cir. 1997).

    B. Federal Rule of Civil Procedure 12(b)(6)

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *Baker v. Putnal*, 75 F.3d 190, 196 (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The well-pleaded facts must permit the court to infer more than just the mere possibility of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997).

There are two guiding principles in determining whether a complaint can survive a motion to dismiss. *Iqbal,* 556 U.S. at 678-79. "First, the tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to dismiss. *Id.* at 678-79. This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but is has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

    *C. The Medicare Secondary Payer Act*

Prior to 1980, Medicate generally paid for medical services whether or not the recipient was also covered by another health plan. *See* Social Security Amendments of 19654, Pub. L. No. 89-87, § 1862(b), 79 Stat. 286 (2006). However, beginning in 1980, Congress enacted a series of cost cutting amendments to the Medicare program, known as the Medicare Secondary Payer Statute ("MSP). *See New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1374 (Fed. Cir. 1999). MSP "makes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available for another primary payer." *Cochran v. United States Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002). "This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay." *Id*. "Consequently, Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer." *United States v. Baxter Int'l. Inc.*, 345 F.3d 866, 875 (11th Cir. 2003).

The MSP also contains a private cause of action which gives private citizens an incentive to aid the government in recovering "funds erroneously paid by Medicare." *See Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 397 n.8 (2d. Cir. 2001); 42 U.S.C. § 1395y(b). It is well-settled that MSP liability (double damages) attaches when a primary plan fails to make payment "promptly" for medical costs for which they are responsible. *See, e.g., Manning* 254 F.3d at 391-92; *see also In re Avandia*, No. 11-2664, 2012 WL 2433508, at *1 (3rd Cir. June 28, 2012) (noting the MSP provides a private cause of action and allows recovery of double damages for failure to reimburse a secondary payer.).

**IV. Analysis**

*A. Defendant's Motion to Dismiss Under Rule 12(b)(1)*

Standard Fire asks the Court to dismiss Thomas' claims under Rule 12(b)(1) on the grounds that Thomas is barred from prosecuting this action under the MSP because he and/or his health care providers failed to first exhaust all their administrative remedies available with the Texas Workers Compensation Commissions before filing this lawsuit. (Dkt. No. 3, ¶3). Thomas responds that he has no obligation to exhaust state law administrative remedies before filing this action because the MSP preempts any requirements that may otherwise be imposed by the Texas Workers Compensation Commission.

The Court agrees with Thomas. This suit is filed under Section 1395y(b)(3)(A) of the MSP, which creates a "private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."[1] 42 U.S.C. §1395y(b)(3)(A) (2006). Defendant Standard Fire fails to cite to any case law to support

---

[1] For a history and explanation of the MSP, see *Manning v. Utilities Mutual Ins. Co.*, 254 F.3d 387, 391-92 (2nd Cir. 2001).

its position that an administrative determination of the reasonableness and necessity of medical services at the state level would be an enforceable pre-requisite to the MSP. Had Congress intended for the MSP to first defer to a state administrative agency, it could have said so explicitly when it enacted the statute. It did not. This Court concludes that the Texas Workers Compensation Statutes do not control over the plain language of the MSP. Accordingly, this Court finds that it does have jurisdiction over this action pursuant to the applicable provisions of the MSP statute. The failure of Thomas, if any, to exhaust all his administrative remedies according to the Texas Workers Compensation Statutes before bringing this action does not deprive the Court of subject matter jurisdiction. Standard Fire's Motion to Dismiss under Rule 12(b)(1) is **DENIED**.

    B. *Defendant's Motion Under Rule 12(b)(6)*

Standard Fire also moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the applicable statute of limitations has expired. (Dkt. No. 3, ¶9-12). It is undisputed that the statute of limitations in an MSP case is six years from the time that the conditional payments were made by Medicare. *See Manning*, 254 F.3d 387 at 398 (Permitting MSP action related to a 30 year old accident "[b]ecause the plaintiff's complaint, filed in July 1998, seeks damages associated with defendants' refusal to pay for medical expenses incurred after 1992"). Here, Medicare began making conditional payments on December 28, 2004. (Dkt. No. 5, ¶22). Plaintiff did not file suit until October 28, 2011. (Dkt. No. 1). As a result, the statute of limitations does not bar Thomas's recovery of any payments occurring after October 28, 2005. Standard Fire's Motion to Dismiss with regard to these payments is **DENIED**. However, payments made between December 28, 2004 and (up to and

through) October 28, 2005 are barred and cannot be recovered by Plaintiff. Standard Fire's Motion to Dismiss with regard to these payments is **GRANTED**.

## V. Conclusion

The Court finds that Thomas' Amended Complaint states a plausible claim for relief under MSP Section 1395y(b)(3)(A) and that portion of his claim arising after October 28, 2005 is not barred by the applicable statute of limitations. Accordingly, and as set forth above, Standard Fire's Motion to Dismiss (Dkt. No. 3) under Rule 12(b)(1) is **DENIED** in all respects. Standard Fire's Motion to Dismiss under Rule 12(b)(6) with regard to its statute of limitations claim is **GRANTED** as to, but only as to, payments made prior to and through October 28, 2005. Such motion is **DENIED** as to Thomas' efforts to recover for payments made after October 28, 2005.

**So ORDERED and SIGNED this 7th day of August, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE